IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MYA DUNN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. CV-05-116-HU |
| v. | ) |
| | ) |
| CSK AUTO, INC., an Arizona corporation, dba SCHUCK'S AUTO SUPPLY, | ) |
| | ) OPINION |
| | ) |
| Defendant. | ) |

Charese A. Rohny
CHARESE ROHNY LAW OFFICE
1515 S.W. Fifth Avenue, Suite 1010
Portland, Oregon 97204

    Attorney for Plaintiff

Joy Ellis
Eric Lindenauer
GARVEY SCHUBERT BARER
121 S.W. Morrison Street
Portland, Oregon 97204-3141

    Attorneys for Defendant

HUBEL, Magistrate Judge:

    Plaintiff Mya Dunn brought this employment discrimination action against her former employer Schuck's Auto Supply. Plaintiff brought three claims: a Title VII pregnancy discrimination claim,

1 - OPINION

a parallel pregnancy discrimination claim under Oregon Revised Statutes §§ (O.R.S.) 659A.029, 659A.030[1], and a common-law wrongful discharge claim based on an allegation that defendant terminated her in retaliation for her exercise, or attempted exercise, of rights under the Oregon Family Leave Act.

The Title VII and wrongful discharge claims were tried to a jury. The Oregon statutory claim was simultaneously tried to the Court. See O.R.S. 659A.885. Additionally, I reserved the issue of economic damages on the Title VII claim, to the Court. Lutz v. Glendale Un. High Sch., 403 F.3d 1061, 1069 (9th Cir. 2005) (plaintiff has no right to have jury determine the appropriate amount of back pay under Title VII, even after the Civil Rights Act of 1991; back pay remains an equitable remedy to be awarded by the district court in its discretion).

The jury returned a verdict in plaintiff's favor on the Title VII claim, awarding her $225,000 in compensatory damages, and $250,000 in punitive damages. However, based on the parties' oral stipulation following receipt of the verdict, the Judgment in this case will reflect a $300,000 total damages award to plaintiff on the Title VII claim pursuant to the statutory cap found in 42 U.S.C. § 1981a(b)(3)(D). The jury returned a verdict in defendant's favor on the wrongful discharge claim.

This Opinion constitutes my Findings of Fact and Conclusions of Law on the liability and damages on the Oregon statutory claim and on the economic damages portion of the Title VII claim. Fed.

---

[1] O.R.S. 659A.030 prohibits employment discrimination "because of sex" and O.R.S. 659A.029 defines "because of sex" to include pregnancy.

2 - OPINION

R. Civ. P. 52(a).

I.  Oregon Statutory Claim - Liability

In this case, the factual issues relevant to the jury's decision on the Title VII claim are identical to the issues relevant to my determination on the O.R.S. 659A.030 claim. As explained by the Ninth Circuit:

> The Seventh Amendment provides that "no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."  This court has held that "it would be a violation of the seventh amendment right to jury trial for the court to disregard a jury's finding of fact." Floyd v. Laws, 929 F.2d 1390, 1397 (9th Cir. 1991).  Thus, in a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are "based on the same facts," in deciding the equitable claims, "the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations." Miller v. Fairchild Indus., 885 F.2d 498, 507 (9th Cir. 1989), cert. denied, 494 U.S. 1056, 110 S. Ct. 1524, 108 L. Ed. 2d 764 (1990).

Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993).

Here, because the federal and state statutory discrimination claims are based on the same facts, the jury's implicit factual determinations regarding liability are preclusive.

Additionally, the legal standards for the state law claim under O.R.S. 659A.030 parallel those for Title VII. Jaurrieta v. Portland Pub. Schs., No. CV-00-1238-ST, 2001 WL 34041143, at *7 and n.12 (D. Or. Dec. 14, 2001) (analyzing O.R.S. 659.030 hostile environment claim under Title VII standards and noting that Oregon courts generally consider and adopt federal case law regarding Title VII), adopted by Judge Brown (D. Or. Feb. 7, 2002); see also Logan v. West Coast Benson Hotel, 981 F. Supp. 1301, 1319 (D. Or. 1997) (in analyzing Oregon discrimination claims under Chapter 659,

3 - OPINION

Oregon courts have looked to Title VII cases for guidance because Oregon statutes are "wholly integrated and related" to Title VII).

Thus, with the same legal standards and the relevant facts implicitly determined by the jury given preclusive effect, I conclude that defendant violated O.R.S. 659A.030 when it terminated plaintiff in January 2004.

II. Damages for the Title VII and Oregon Statutory Claims

Plaintiff seeks both past and future lost wages in connection with her Title VII claim. Sec. Am. Pretrial Order at ¶¶ 10, 11. She bases her lost future wage claim on her contention that reinstatement is not feasible. Id. at ¶ 11.

She seeks economic, non-economic, and punitive damages in connection with her O.R.S. 659A.030 claim. Id. at ¶ 5, 8. The relevant statute, however, limits the relief for the state claim to injunctive and equitable relief, including back pay and attorney's fees. O.R.S. 659A.885. No other economic damages, no non-economic damages, and no punitive damages, are allowed. Id. She also seeks a declaration that defendant acted in violation of O.R.S. 659A.030, and attorney's fees. Id. at ¶¶ 6, 7. My conclusion above that defendant violated O.R.S. 659A.030 when it terminated plaintiff in January 2004 accords plaintiff the declaratory relief sought on that claim. Plaintiff has voluntarily dismissed her claim for injunctive relief.

During the trial, I concluded that the evidence on any claim for future lost wages in connection with the wrongful discharge claim, was insufficient to send to the jury. Plaintiff testified that she voluntarily withdrew from the workforce, and specifically from seeking employment, in January 2006. She indicated that she

4 - OPINION

was frustrated with the inability to find work.

When asked if she was going to look for work again, plaintiff said "[i]n September, when my kids go back to school and preschool, I need to -- for myself, I need that part of it.  I need to be needed outside the home. . . . . I seem to be a better mom if I've got other things to focus on also."

Plaintiff limited her past lost wages claim to the period of mid-January 2004 through mid-January 2006.  I determined that her testimony that she might start to look for work again in September 2006 was simply too speculative to form the basis of a future lost wage claim, and as discussed below, that testimony also comes into play in the issue of mitigation of damages.  My conclusion applies to the Title VII future lost wage claim as well.  Accordingly, I consider only plaintiff's claim for past lost wages (on the Title VII and O.R.S. 659A.030 claims) and I make no award of future lost wages on the Title VII claim.

The evidence was that plaintiff's annual salary at the time of discharge was $31,416.95.  Exh. 63 (employer printout of plaintiff's compensation rate); Exh. 7 (handwritten note on "Case and Interview Information Sheet" indicating salary of $31,417); Trial Testimony of Deft's Voc. Rehab. Expert Hank Lageman (noting that plaintiff's annual salary was $30,000 - $31,000 per year). According to the employer printout of her compensation rate, her monthly salary at the time of discharge was $2,618.08.  Exh. 63.

Plaintiff testified that in the two years following her discharge until she voluntarily abandoned her search for employment in January 2006, she applied for eight to twelve jobs.  The undisputed testimony of defendant's expert Lageman was that a

5 - OPINION

reasonable person in plaintiff's circumstances would apply for at least two jobs per day. He noted that the search for a job should resemble close to full-time work. He also stated that typically, it would take a person in plaintiff's position sixty to ninety days to find another job, and at most, six months. This testimony was undisputed.

Plaintiff has the duty to use reasonable efforts to mitigate damages. Defendant has the burden of proving that plaintiff failed to use reasonable efforts to mitigate damages. Based on plaintiff's and Lageman's testimony, I conclude that plaintiff's efforts to find substantially equal employment following her termination were not reasonable. I note that had plaintiff used reasonable efforts to find suitable employment after her termination, she may not have taken herself out of the job market in January 2006. Thus, her failure to conduct a reasonable job search affects both her lost past wage claim and her lost future wage claim.

Considering that it reasonably may take some period of time to begin to search for new employment (targeting likely employers, tracking advertisements, updating a resume, etc.), and given that she did put forth some minimal effort in looking, I award plaintiff six months of lost past wages. Based on her monthly salary of $2,618.08, her award is $15,708.48.

As part of her lost past wages claim, plaintiff also seeks the value of certain stock options she lost upon termination. At the time of her termination in January 2004, she held two stock option awards. Exh. 68. The first was for 300 shares, exercisable at a price of $21.68 per share. Id. The second was for 50 shares,

6 - OPINION

exercisable at a price of $8.38 per share.  Id.

According to the undisputed testimony of defendant's Regional Vice-President Ken Roscoe, defendant's stock never exceeded a price of $21.68 per share in the last few years.  The average price during this time period was about $15 per share with a high of $19 per share at one point.  Based on Roscoe's testimony, I award plaintiff no damages for the loss of her 300 share stock option. Given that the share price never exceeded her exercise price, it is more probable than not that she would not have exercised the option to purchase those shares.  For the 50 share option, however, I award plaintiff the difference between her exercise price of $8.38 per share and the high value of $19 per share, or $10.62 per share. For the 50 shares, the sum is $531.

Plaintiff's total economic damages award is $16,239.48.

## CONCLUSION

I find for plaintiff on her O.R.S. 659A.030 claim and I award plaintiff economic damages on her Title VII and O.R.S. 659A.030 claims in the amount of $16,239.48.

IT IS SO ORDERED.

Dated this   11th   day of  August     , 2006.


  /s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

7 - OPINION