1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                       FOR THE DISTRICT OF OREGON

11   MYA DUNN,                    )
                                  )
12                Plaintiff,      )
                                  )      No.  CV-05-116-HU
13        v.                      )
                                  )
14   CSK AUTO, INC., an Arizona   )
     corporation, dba SCHUCK'S AUTO)
15   SUPPLY,                      )      OPINION & ORDER
                                  )
16                Defendant.      )
     ─────────────────────────────)

17
     Charese A. Rohny
18   CHARESE ROHNY LAW OFFICE
     1515 S.W. Fifth Avenue, Suite 1010
19   Portland, Oregon 97204

20        Attorney for Plaintiff

21   Eric A. Lindenauer
     Joy Ellis
22   GARVEY SCHUBERT BARER
     121 S.W. Morrison Street
23   Portland, Oregon 97204-3141

24        Attorneys for Defendant

25   HUBEL, Magistrate Judge:

26        On July 31, 2006, a jury awarded plaintiff $225,000 in non-

27   economic  compensatory  damages  on  a  Title  VII  pregnancy

28   discrimination claim.  The jury also awarded plaintiff $250,000 in

     1 - OPINION & ORDER

punitive damages on this claim.  The jury found for defendant on a state common-law wrongful discharge claim.

In a subsequent Opinion, I awarded plaintiff $16,239.48 in past lost wages on her Title VII claim and a parallel claim under Oregon Revised Statute § (O.R.S.) 659A.030.  Aug. 11, 2006 Op. & Ord.  I rejected plaintiff's claim for front pay.  Id.  In that Opinion, I also noted that based on the parties' oral stipulation following receipt of the verdict, the Judgment in this case would reflect the $300,000 statutory cap on compensatory and punitive damages found in 42 U.S.C. § 1981a(b)(3)(D), on the Title VII claim.  Thus, the total damages recovered by plaintiff on her Title VII and O.R.S. 659A.020 claims in the Judgment was $316,239.48.

Plaintiff now moves for an award of $277,661.50 in attorney's fees and $11,397.86 in costs.  I grant the attorney's fee motion in part and deny it in part, and I grant the cost request in part and deny it in part.

I.  Attorney's Fee Motion

A.  Entitlement to Fees

42 U.S.C. § 2000e-5(k) authorizes an award of attorney's fees for a prevailing Title VII claimant.  O.R.S. 659A.885(1) provides for the same entitlement on the parallel state claim.  There is no dispute that plaintiff is the prevailing party.

B.  Standards for Awarding Fees

In determining a reasonable attorney's fee, the district court first calculates the lodestar by multiplying the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  Caudle v Bristow Optical Co., Inc., 224 F.3d 1014, 1028 (9th Cir. 2000) (fee award for Title VII claim).

2 - OPINION & ORDER

In calculating the lodestar amount, the district court should take into account any relevant factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).[1]  McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).

There is a strong presumption that the lodestar figure is a reasonable fee. Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).  The presumptively reasonable lodestar figure may be adjusted downward or upward only on the basis of those factors not already subsumed in the lodestar calculation. Morales v. City of San Rafael, 96 F.3d 359, 363-64 (9th Cir. 1996), amended on other grounds, 108 F.3d 981 (9th Cir. 1997). "The subsumed factors are: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, the results obtained and the superior performance of counsel." D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1383 (9th Cir. 1990) (citations omitted), overruled on other grounds, City of Burlington v. Dague, 505 U.S. 557 (1992).

A district court possesses "considerable discretion" in determining the reasonableness of a fee award.  See Webb v. Ada County, 195 F.3d 524, 526 (9th Cir. 1999).  Even absent specific

---

[1]   The factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  McGrath, 67 F.3d at 252 n.4.

1 objections by the opposing party, the court has an independent duty
2 to scrutinize a fee request to determine its reasonableness. <u>Gates</u>
3 <u>v. Deukmejian</u>, 987 F.2d 1392, 1401 (9th Cir. 1993); <u>see also</u> <u>Poole</u>
4 <u>v. Textron, Inc.</u>, 192 F.R.D. 494, 508 (D. Md. 2000) (because the
5 award must be reasonable, it is incumbent on the district court to
6 subject the request to an independent review to "insure that the
7 time expended . . . was not excessive to the task and [to consider]
8 the hourly rate charged in light of fees charged in the legal
9 community for services of like kind and quality.").

10     Several decisions from this Court have used the federal
11 lodestar calculation in cases involving both federal and state
12 claims. <u>E.g.</u>, <u>Roalio v. Nunez</u>, No. CV-04-379-BR, 2005 WL 2140331,
13 at *1 (D. Or. Aug. 30, 2005) (using federal lodestar method for
14 determining fee award when plaintiff prevailed on both federal and
15 state wage claims); <u>Settlegoode v. Portland Public Sch.</u>, No. CV-00-
16 313-ST, 2005 WL 1899376, at *1 (D. Or. Aug. 9, 2005) (using federal
17 lodestar method for determining fee award when plaintiff prevailed
18 on federal disability and civil rights claim and state
19 whistleblower claim); <u>Mockler v. Skipper</u>, 942 F. Supp. 1364, 1366
20 (D. Or. 1996) (using federal lodestar method for determining fee
21 award when plaintiff prevailed on federal constitutional rights
22 claim and state employment discrimination claim). Here, I
23 similarly use the lodestar calculation and analysis to determine
24 the appropriate fee award.

25     C.  Reasonable Hourly Rates

26     In determining the reasonable hourly rate, the court must look
27 at the "prevailing market rates in the relevant community." <u>Blum</u>
28 <u>v. Stenson</u>, 465 U.S. 886, 895 (1984). The court determines what a

lawyer of comparable skill, experience, and reputation could command in the relevant community.  Id. at 895 n.11; see also Robins v. Scholastic Book Fairs, 928 F. Supp. 1027, 1333 (D. Or. 1996) ("In setting a reasonable billing rate, the court must consider the 'prevailing market rates in the relevant community' and determine what a lawyer of comparable skill, experience, and reputation could command in the relevant community."), aff'd, 116 F.3d 485 (9th Cir. 1997).

The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.  Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

This Court uses the Oregon State Bar Economic Survey (OSB Survey) as its initial benchmark for determining a reasonable hourly rate.  See "Message from the Court Regarding Attorney Fee Petitions" on the Court's website:  ord.uscourts.gov.

Three attorneys worked on this case for plaintiff.  While the case was pending with Crispin Employment Lawyers, attorneys Charese Rohny, Shelley Russell, and Craig Crispin all worked on the case.[2] In February 2006, Charese Rohny opened her own practice and she apparently brought the case with her from Crispin Employment Lawyers.  Rohny has been the lead attorney on the case since its

---

[2] Crispin's Declaration in Support of Plaintiff's Motion for Fees & Costs indicates that attorney Patty Rissberger also worked on the case.  Crispin Declr. at ¶ 20.  However, I see no time billed by Rissberger in the billing statements attached to Crispin's Declaration.  Exh. B to Crispin Declr.

5 - OPINION & ORDER

inception.  After the case was pending with Rohny's office, Rohny performed all work on the case with the exception of approximately three hours billed by Crispin immediately before and during trial.

Rohny seeks an hourly rate of $240.  She has been practicing law since her graduation from law school in 1995.  Although she had only nine years of experience in 2004 when the case began, the bulk of the work of the case was done in 2005 and 2006, when she had ten or more years of experience.  Thus, it is reasonable to review the OSB Survey for hourly rates for Portland practitioners with ten to twelve years of experience.

In 2002, the average hourly rate billed by Portland lawyers with that level of experience was $187.  The median rate for attorneys in that category was $180 per hour, with $150 per hour for those in the twenty-fifth percentile and $225 per hour for those in the ninety-fifth percentile.

Also in 2002, the average hourly rate for Portland plaintiff civil litigation attorneys, excluding those who practice in the personal injury area, was $186, with the median rate at $200. Adjusting the 2002 average $187 hourly rate[3] for inflation[4], the

---

[3]   Ideally, the OSB Survey would provide an additional category blending billing rate by type of practice with billing rate by years of experience.  Because, for Rohny, the average billing rate in the years of experience category and the average billing rate in the area of practice category differ by only $1.00, I choose to rely on the higher of the two rates, or $187 per hour, in making adjustments for inflation.

[4]   As seen in the Bureau of Labor Statistics website, the Consumer Price Index (Urban) for All Items shows an average inflation rate of 1.9% for 2003, 3.3% for 2004, and 3.4 percent for 2005.  Available at: ftp://ftp.bls.gov/pub/special.requests.cpi.cpiai.txt.  For the purposes of this Opinion, I assume that the inflation rate for

6 - OPINION & ORDER

1  applicable average 2006 hourly rate for attorneys with ten to
2  twelve years of practice is $210.45. The 2005 average rate is
3  $203.53 per hour for attorneys in this category.

4      Rohny's requested rate of $240 per hour is above the average
5  rate for similarly situated attorneys. Although her requested rate
6  is within the ranges reflected in the OSB Survey, she offers no
7  reasonable basis for an award at the top end of the range. She is
8  obviously a skilled and knowledgeable attorney who provided
9  excellent representation for her client. However, these facts
10 alone do not support an award at the high end of the range.

11     Plaintiff argues that the requested rate is reasonable based
12 on the Morones Survey of Commercial Litigation Fees. The 2004
13 Summary Report to the Morones Survey shows that the 2004 average
14 hourly rate for attorneys with nine or fewer years of practice is
15 $199, and the 2004 average hourly rate for attorneys with ten to
16 nineteen years of practice is $272. Exh. 3 to Rohny Declr. at p.
17 2.

18     I reject the Morones Survey as providing a reasonable source
19 of information for attorney fee rates applicable to this case. The
20 Morones Survey was designed to develop market data for Portland
21 area firms specializing in commercial litigation. Id. at p. 3.
22 The instant case was not a commercial litigation case and did not
23 involve attorneys specializing in commercial litigation. Moreover,
24 the Morones Survey gathered information from commercial litigation
25 firms only if they had more than five attorneys specializing in
26 commercial litigation. Id. Neither of the law firms representing

27 _____

28 2006 will be 3.4%.

7 - OPINION & ORDER

plaintiff in this case employs five attorneys. Finally, the survey sample was relatively small compared to the OSB Survey. The Morones Survey relied on information provided by sixteen firms. Id. In contrast, the OSB Survey received responses from 812 attorneys in downtown Portland. OSB Survey at p. 5.

Based on the OSB Survey and the lack of a basis to deviate from the average rate reflected there, I conclude that a reasonable rate for all of the time Rohny expended in this case is $205 per hour, regardless of whether the time was expended in 2004, 2005, or 2006.

Russell provided 0.2 hours of work on the case on January 24, 2006. Exh. B to Crispin Declr. at p. 4. Although the billing statement shows her rate to be $250 per hour, Crispin states in his declaration that Russell's rate is $240 per hour, the same as sought by Rohny. Compare Id. with Crispin Declr. at ¶ 23.

Based on Crispin's statement that Russell's correct billing rate is the same as Rohny's, and based on the fact that Russell has been practicing law only one year more than Rohny and thus, her rate also falls into the OSB Survey category of rates for attorneys with ten to twelve years of experience, I conclude that the reasonable rate for Russell's time is the same as Rohny's, $205 per hour.

Crispin seeks a rate of $325 per hour. The OSB Survey shows that the average hourly rate in 2002, for attorneys with twenty-one to thirty years of experience, was $227, with a median rate of $225. The 2002 rate for those in the twenty-fifth percentile was $180 per hour and was $300 hour for those in the ninety-fifth percentile. During the years that this case was pending, Crispin

8 - OPINION & ORDER

had twenty-two to twenty-four years of experience.

While Crispin is also a skilled and knowledgeable representative with expertise in employment law, these facts alone do not justify a rate at the high end of the range, especially when his years of experience put him at the low to middle part of the twenty-one to thirty year experience category. In contrast to Rohny's rate, however, the average rate for the two relevant categories for assessing a reasonable rate for Crispin differ by $41. As noted above, the average rate for plaintiff civil litigators, outside of those practicing personal injury law, was $186 in 2002, $41 less per hour than the $227 average rate for practitioners with twenty-one to thirty years of experience.

In the absence of the OSB Survey providing a category combining years of practice with specialty, I conclude that the reasonable course is to average the two relevant rates and then adjust the rate for inflation. Thus, the relevant rate for Crispin in 2002 was $206.50, which I round to $207 for convenience. Adjusted for inflation, Crispin's reasonable rate in 2005 would have been $225.30 per hour, and in 2006 is approximately $230 per hour. I award Crispin $225 per hour for all hours worked on this case, whether the time was incurred in 2004, 2005, or 2006.

Two other persons performed work on the case. Gail Stevens was employed as a paralegal by Crispin Employment Lawyers and as a paralegal and law clerk by Rohny once Rohny set up her own practice in February 2006. Stevens possesses a law degree and has several years of experience as a law clerk and/or as a paralegal.

Curiously, plaintiff seeks a rate of $125 per hour for the hours Stevens billed while at Crispin Employment Lawyers in 2004

9 - OPINION & ORDER

through February 2006, but only $90 per hour for the hours billed while working for Rohny after February 2006. I conclude that a reasonable hourly rate for all of the time billed by Stevens, in 2004, 2005, or 2006, is $90 per hour.

Finally, I conclude that the requested $40 per hour rate for the time spent by paralegal Lindsay Swan, is reasonable.

D.   Reasonable Number of Hours

It is the fee claimant's burden to demonstrate that the number of hours spent was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary[.]" Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1557 (9th Cir. 1989) ("[p]laintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [] claims").

Plaintiff requests fees for 1,367.9 hours of time spent in prosecuting the case. The total attorney time is 1,083.9 hours, with 1,062.6 hours requested by Rohny, 21.1 hours requested by Crispin, and 0.2 hours requested by Russell. The total paralegal/law clerk time is 284 hours, with Stevens requesting 47.3 of those hours and Swan requesting 236.7 of those hours.[5]

---

[5] Although plaintiff submitted all of the individual billing records, she failed to note a total number of hours requested and failed to include a breakdown of the total number of hours by attorney and paralegal, a customary feature in most fee petitions. Although defendant's memorandum in opposition to the fee request reflects the total number of hours requested, it also does not segregate the number of hours by practitioner. When different practitioners request different hourly rates, it

10 - OPINION & ORDER

1  Defendant argues that the number of requested hours is unreasonable

2  in several respects.  I address defendant's arguments in turn.

3              1.  Response to Summary Judgment Motion

4       Defendant states that plaintiff's counsel spent over 200 hours

5  preparing a response to the summary judgment motion defendant filed

6  on March 10, 2006, with an additional 35 hours of work by a law

7  clerk.[6]  My review of the billing records shows that Rohny spent

8  174.1 hours, with Stevens contributing 35 additional hours.

9       This was not an overwhelmingly difficult case.  As employment

10 cases go, this pregnancy discrimination case was straightforward -

11 was plaintiff terminated for cheating on her time cards or was she

12 terminated because she was pregnant?  The legal issues on summary

13 judgment were common to employment discrimination claims:  was

14 there a prima facie case, was there a legitimate business reason

15 for defendant's conduct, and was there evidence of pretext?

16 ────────────────────────

17 is incumbent on the parties to adequately support the request, or
   opposition, with a more detailed presentation of the record so

18 that the Court is not forced, as it was here, to expend its
   resources laboring over simple, but dozens, of calculations to

19 determine the number of hours spent by each lawyer and paralegal.

20

21    [6] Defendant failed to identify any particular billing
   entries in many of the following arguments regarding excessive

22 number of hours spent on a particular task, creating an
   unnecessary burden on the Court.  Moreover, because defendant did

23 not cite to specific entries, I cannot know how it computer the
   totals it alleges.  In several instances, my review and

24 computation resulted in fewer hours spent on a task than that
   alleged by defendant.  This worked in plaintiff's favor, because,

25 for example, as seen in the discussion of the hours spent on the
   summary judgment response, I did not subtract 168 hours from

26 Rohny's total time (200 hours allegedly spent on the task less 32
   awarded as a reasonable number of hours), but instead subtracted

27 142.1 hours (174.1 hours spent on the task as determined by the
   Court less 32 awarded as a reasonable number of hours).

28

11 - OPINION & ORDER

1  Additionally, the state common law wrongful discharge claim
2  presented no complex legal challenges.

3       Factually, the case involved an above-average number of paper
4  documents, generated by the defendant's articulation of timecard
5  fraud as its legitimate business reason for its actions.
6  Nonetheless, the summary judgment motion was not complex, either
7  factually or legally.

8       I cannot support plaintiff's requested hours for time spent
9  responding to the summary judgment motion.  At 40 work hours per
10  week, plaintiff asserts that it took her counsel and paralegal/law
11  clerk more than five weeks of work to prepare the response to the
12  motion.  Based on my years of experience as a litigator, and my
13  years of experience as a jurist, I find it unreasonable to conclude
14  that the response in this case could not be done in less than one
15  week's time.  I award plaintiff 32 hours of Rohny's time for
16  responding to the summary judgment motion, and no time for the
17  paralegal/law clerk.

18            2.   Summary Judgment Oral Argument

19       Defendant states that plaintiff's counsel spent almost 20
20  hours preparing for oral argument on defendant's summary judgment
21  motion.  My review of the record shows that Rohny spent 12.1 hours
22  on this task.  Based on my experience, this number of hours is
23  unnecessarily excessive.  I award plaintiff 3 hours for preparing
24  for the summary judgment oral argument.

25            3.   Witness Examinations

26       Defendant states that plaintiff's counsel spent approximately
27  100 hours preparing for direct witness examinations and cross-
28  examination of witnesses.  My review shows that Rohny spent 66.3

12 - OPINION & ORDER

hours preparing for witness examinations.   It is unreasonable to
spend more time preparing for witness examination than was spent in
trial.   I award plaintiff 12 hours for trial witness preparation,
based on an average of 3 hours of preparation for each of the 4
days witnesses were examined at trial.

### 4.   Exhibits and Exhibit Lists

Defendant states that plaintiff's counsel and paralegal spent
approximately 150 hours preparing exhibits and exhibit lists.   My
review of the record shows that Rohny spent 65.7 hours on this
task, while Swan spent 68.5 hours.   Plaintiff submitted
approximately 81 exhibits for trial.   Plaintiff used approximately
21 of those with witnesses during trial.   While, as noted above,
this case involved an above-average number of documents compared
with similar cases, preparation of this number of exhibits and the
exhibit list should not have required more than 130 hours of time.
I award Rohny 12 hours and Swan 8 hours, for preparing exhibits and
exhibit lists.

### 5.   Witness Statements

According to defendant, plaintiff's counsel and paralegal
spent over 40 hours preparing witness statements. My review of the
record shows that Rohny spent 23.4 hours on this task and Swan
spent 7.75 hours.   Plaintiff's initial witness list and witness
statement submission was approximately 21 pages long and consisted
of statements of 15 witnesses.   For each of the last 8 witnesses
listed in that submission, the statement consisted of from 1 to 4
paragraphs.   More than 30 hours spent preparing this submission is
an unreasonable amount of time.   No more than two days is required
to prepare such a submission.   I award 8 hours to Rohny and 8 hours

13 - OPINION & ORDER

1  to Swan for this task.

2          6.   Jury Instructions

3          Defendant states that plaintiff spent more than 40 hours
4  preparing jury instructions for this case.  My review of the record
5  is consistent with defendant's representation.    The joint jury
6  instruction submission was a product of work by both parties.  The
7  parties generally relied on model instructions from the Ninth
8  Circuit, with some additional proposed instructions from the Oregon
9  Uniform Civil Jury Instructions.  The only issue that required any
10 significant substantive input to the pattern instruction was the
11 wrongful discharge claim.    40 or more hours is an unreasonable
12 amount of time to spend on the jury instructions.    I award
13 plaintiff 12 hours for this task.

14          7.   Responding to Objections to Witnesses & Exhibits

15         Defendant states that plaintiff and her paralegal spent 30
16 hours responding to defendant's objections to plaintiff's witnesses
17 and exhibits.    My review of the record is consistent with
18 defendant's representation and shows that Rohny spent 24 hours
19 while Swan spent 6.

20         Defendant objected to three witnesses, in a six-page
21 memorandum.  Two of the three objections were short:  one that a
22 group of four witnesses could not called because they were not
23 disclosed during discovery and another than the witness's proposed
24 testimony was inadmissible hearsay.  The most substantive argument
25 was directed to the proposed testimony of the BOLI Investigator.

26         Plaintiff's response memorandum was four pages, plus a
27 declaration from her paralegal and a copy of a letter, all related
28 to whether the four witnesses were timely disclosed and whether

14 - OPINION & ORDER

1  identifying them was responsive to defendant's discovery requests.
2  The substantive argument about the BOLI investigator was actually
3  in plaintiff's response to defendant's motion in limine and was
4  incorporated by reference in the response to the witness
5  objections.    There was a one-paragraph response to the hearsay
6  objection.

7      Defendant objected to 34 of plaintiff's 81 exhibits.    The
8  objection submission was 3.5 pages, consisting of the exhibit
9  number and the type of objection, without argument.    Plaintiff's
10  response was approximately nine pages.

11      Spending 30 hours preparing responses to these objections was
12  unreasonable.    As noted, the only truly substantive argument made
13  in the witness objections was as to the BOLI investigator and
14  plaintiff responded to that argument in the response to the motion
15  in limine.    While the exhibit objections were more numerous, they
16  were, in several instances, repetitive and overlapping, and
17  preparing responses to them did not reasonably require the amount
18  of time billed.    I award plaintiff 4 hours for the time spent on
19  this task, and I award it all to Rohny.

20          8.  Deposition Designations

21      Defendant states that plaintiff and her paralegal spent 20
22  hours designating deposition testimony.    My review shows that Rohny
23  spent 5 hours on this task, while Swan spent 15 hours.    Plaintiff
24  submitted deposition designations for 4 witnesses (31 separate
25  passages for Williams; 6 separate passages for Stolpe; 13 separate
26  passages for Beck; and 12 hours for Roscoe).    I conclude that 5
27  total hours is a reasonable number of hours for this task, and I
28  award 3 hours to Rohny and 2 to Swan.

15 - OPINION & ORDER

1          9.  Trial Memorandum

2          Defendant states that plaintiff's counsel spent 15 hours

3     preparing the trial memorandum.  My review of the record is

4     consistent with defendant's representation.  Plaintiff's trial

5     memorandum was approximately 19 pages in length, most of which was

6     a repeat, albeit not verbatim, of facts and legal issues thoroughly

7     reviewed in the summary judgment briefing.  No more than 6 hours

8     should have been required to prepare the trial memorandum.  I award

9     plaintiff 6 hours for this task.

10         10.  Voir Dire

11         Defendant states that plaintiff's counsel spent 13 hours

12    preparing the proposed voir dire submitted for the Court's

13    consideration in advance of trial.  My review of the record shows

14    that Rohny spent 11.25 hours preparing voir dire.  Given that

15    plaintiff's counsel is a fairly experienced litigator and should

16    have been able to rely on boilerplate voir dire questions for much

17    of her proposed questioning, and given that any non-boilerplate

18    questions would not have been extensive, I award plaintiff 1.0 hour

19    for this task.

20         11.  Verdict Form

21         Defendant states that plaintiff's counsel spent 4 hours on the

22    verdict form.  My review of the record is consistent with

23    defendant's representation.  Because of the presence of state and

24    federal claims, with the state claim carrying a different burden of

25    proof on punitive damages than the federal claim, the verdict form

26    was slightly, but not overly, complex.  Including the time spent

27    discussing the verdict form during trial with the Court, I conclude

28    that 3 hours is a reasonable amount of time to have spent on the

16 - OPINION & ORDER

verdict form.

12.   Opening Statement and Closing Argument

According to defendant, plaintiff's counsel spent over 60 hours preparing her opening statement and closing arguments.  My review of the record shows that Rohny spent 51.1 hours on this task.  While plaintiff's counsel was well-prepared and presented a comprehensive opening statement and a vigorous closing argument, 60 hours spent in preparing for such tasks is unreasonable.  I award plaintiff 5 hours for time spent on these tasks.

13.   Time Spent on Wrongful Discharge Claim

As noted above, the jury found for defendant on the wrongful discharge claim.  Defendant argues that time spent on this claim should be disallowed.  Defendant contends that the two claims hinged on separate factual events and although both claims relied on testimony from some of the same witnesses, the claims were not closely related such that plaintiff should recover her fees for the time spent solely on the wrongful discharge claim.

I disagree with defendant.  In determining whether a plaintiff may receive fees for unsuccessful claims, the court must determine if the claims upon which plaintiff failed to prevail were related or unrelated to plaintiff's successful claims.  Hensley, 461 U.S. at 434-35.  If unrelated, the final fee award may not include time expended on unsuccessful claims.  Id.; see also Sloman v. Tadlock, 21 F.3d 1462, 1474 (9th Cir. 1994) (reasonable hours include those for successful or closely related claims).

Related claims involve a common core of facts or are based on related legal theories, while unrelated claims are distinctly different and based on different facts and legal theories.  Thorne

17 - OPINION & ORDER

1  v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986).

2      As explained in Thorne, the "test for relatedness of claims is
3  not precise." Id.  The Thorne court, relying on a post-Hensley
4  decision from the Seventh Circuit, indicated that the test "is
5  whether relief sought on the unsuccessful claim is intended to
6  remedy a course of conduct that gave rise to the injury on which
7  the relief granted is premised." Id. (internal quotation omitted).

8      The court also noted that other courts had "considered whether
9  the  unsuccessful  claims  were  presented  separately,  whether
10 testimony on the successful and unsuccessful claims overlapped, and
11 whether the evidence concerning one issue was material and relevant
12 to  the  other  issues." Id.  The Thorne court noted that the
13 district  court  could  have  reasonably  concluded,  pursuant  to
14 Hensley,  that  the  plaintiff's  successful  Title VII  claim  and
15 unsuccessful 42 U.S.C. § 1983 claim,  were  related  based on a
16 "common core of facts" and the fact that evidence material to one
17 claim was material to the other. Id. at 1142.

18     Ultimately, the Ninth Circuit remanded the case back to the
19 district  court  to  make  the  determination  because  the  district
20 court's order had failed to reflect the court's own analysis in the
21 first instance. Id. The court did explain that under Hensley, if
22 the successful and unsuccessful claims were related, the district
23 court should then evaluate the significance of the overall relief
24 obtained  by  the  plaintiff  in  relation  to  the  hours  reasonably
25 expended  on  the  litigation. Id. at 1141.  If the plaintiff
26 obtained  "excellent  results,"  then  full  compensation  may  be
27 appropriate. Id.

28     In a 1995 case, the Ninth Circuit reviewed several post-Thorne

18 - OPINION & ORDER

cases and continued to apply the standards adopted there.  <u>Schwarz</u>
<u>v. Secretary of Health & Human Servs.</u>, 73 F.3d 895, 903 (9th Cir.
1995).  The court concluded that the district court had not abused
its discretion in denying fees for the plaintiff's unsuccessful
claims as being unrelated to her successful claims when the
plaintiff's claims involved different legal theories and the course
of conduct about which she complained, and the relief sought, were
entirely distinct and separate.  <u>Id.</u>

In the instant case, I conclude that the Title VII claim and
the wrongful discharge claim are related.  While the legal analysis
for each claim differs slightly (the Title VII claim is premised on
a theory that the employee was discharged because of a protected
status while the wrongful discharge claim is premised on a theory
that the employee was discharged for pursuit of an employment-
related right), the theories are not widely disparate.  They both
involve the employer's alleged motivations for the same conduct.

Moreover, in this case, the facts for both claims overlapped.
In the wrongful discharge claim, plaintiff attempted to prove that
defendant discharged her for her pursuit of her right to take time
off to go the doctor for a serious medical condition, a right
guaranteed her by Oregon's Family Medical Leave Act (OFLA).  The
serious medical condition at issue was her pregnancy.  Although
plaintiff initially requested the time off on January 1, 2004,
without revealing her pregnancy, defendant's continued refusal to
allow her the time off to seek medical attention as a result of her
car accident, caused her to inform defendant that it was the
potential harm to her unborn child as a result of that car accident
which created the need for her time off.  Thus, although strictly

19 - OPINION & ORDER

1  speaking her claim was that her repeated requests for time off so

2  angered defendant that it terminated her in retaliation for making

3  those requests, her pregnancy was a critical fact underlying the

4  claim.

5      Facts adduced as part of the wrongful discharge claim,

6  including the date that plaintiff told her employer about her

7  pregnancy, and the circumstances leading to her telling Woldrich

8  instead of her more immediate supervisor Williams, were relevant to

9  her Title VII claim.  One of plaintiff's theories in her Title VII

10  claim was that after Woldrich learned of plaintiff's pregnancy on

11  January 1, 2004, Woldrich informed Beck who then ordered Kuypers to

12  investigate plaintiff's time cards.  Defendant contended that

13  Kuypers initiated the investigation on January 6, 2004, after

14  returning from a vacation and after receiving complaints about

15  plaintiff from other employees.  However, Beck mentioned a January

16  9, 2004 meeting with Kuypers and plaintiff to plaintiff on January

17  5, 2004.  This was one day before Kuypers claimed to have known of

18  the requested investigation and to have started the investigation.

19  Thus, the timing of the disclosure of plaintiff's pregnancy and

20  that it was to Woldrich, who then allegedly told Beck, were

21  important facts to the pregnancy discrimination claim, even though

22  they were put forth as part of the wrongful discharge claim as

23  well.

24      The relief sought on the wrongful discharge claim was intended

25  to remedy a course of conduct that gave rise to the Title VII

26  injury.  The claims were presented simultaneously, testimony on

27  the two claims overlapped, and the evidence was material and

28  relevant to the Title VII claim.  Finally, because plaintiff

20 - OPINION & ORDER

obtained an excellent result, full compensation is appropriate.

           14.   Block Billing Entries

       In previous decisions, I have defined "block billing" as any single time entry of three or more hours containing four or more tasks, or containing only two tasks where one of the two tasks could have taken anywhere from a small to a substantial period of time. E.g., Frevach Land Co. v. Multnomah County, No. CV-99-1295-HU, 2001 WL 34039133, at *12 (D. Or. Dec. 18, 2001).

       Defendant identifies three "block billed" entries which it argues should not be awarded.  Plaintiff's counsel kept very detailed and accurate records overall.  Out of the hundreds of individual time entries, defendant has identified only three with a "block billing" problem.  My independent review of the billing records confirms that it was an isolated problem.

       I agree with defendant regarding two of the entries.  On December 28, 2004, plaintiff's counsel spent 7.1 hours on four separate tasks:  1) drafting the complaint; 2) reviewing the BOLI file; 3) conferring with plaintiff regarding the complaint, the BOLI file, potential issues to review (witness list, relations of witnesses, preparing outline of discovery requests); and 4) preparing "same."  Exh. B to Crispin Declr. at p. 1.  While all of these tasks are generally related to the initiation of the lawsuit, they are distinct enough to have been segregated in the billing entry.  I do not award this time.

       Next, defendant objects to an entry on January 30, 2006, in which Rohny billed 3.4 hours for five tasks:  1) review documents produced in response to plaintiff's second request for production; 2) review email from defense counsel; 3) conference with plaintiff;

21 - OPINION & ORDER

4) prepare exhibits for depositions of Beck, Roscoe, and Stolpe; and 5) conference with co-counsel. Id. at p. 5. I do not award this time.

Finally, defendant objects to 13.1 hours billed by Crispin on January 31, 2006, for "[t]ravel to Sacramento; take witness depositions; return to Portland." Id. I do not view this entry as a block billing problem. First, as defined above, the block billing problem appears when there is an entry showing three or more hours spent on four or more tasks. Even considering these tasks as separate, there are only three of them. Second, the three tasks are clearly related, creating no impediment to assessing the reasonableness of any time spent taking depositions. This time is properly awarded to plaintiff.

15.   Standard Minimum Billing Entry of 0.2 Hours

Defendant complains that plaintiff's counsel bills a minimum of 0.2 hours for every time entry, even when many of these entries "in all probability took less than 12 minutes[.]" Deft's Mem. in Opp. at p. 6. Defendant argues that the cumulative effect of this billing minimum should be discounted by the court.

Defendant states there are more than 70 such entries. Defendant makes specific objection to only 4 of them because defense counsel possesses personal knowledge of the task reported only as to these 4 entries. Defendant suggests that it is the court's responsibility to examine the remaining 66 entries to determine their reasonableness. While defendant may lack personal knowledge of the other 66 entries, and while the court does have a duty to independently review and assess the requested fees, opposing parties should not simply raise an objection and fail to

22 - OPINION & ORDER

offer some meaningful discussion to the court in aid of its objection.  Here, by stating that it would not be unreasonable to assume that some of the other entries actually took less than 12 minutes, Deft's Opp. at p. 8 n. 5, defendant impliedly acknowledges that some of these other entries are likely reasonable.  It would have been helpful to the court if defendant could have, at least, cited to those of most concern to defendant.

First, however, I agree with defendant that as to the 4 entries to which it specifically objects, the 0.2 hours, or twelve minutes, requested by plaintiff is unreasonable.  As outlined in defendant's memorandum, these four entries were for time spent reading very short emails from defense counsel.  In one instance, on March 6, 2006, the email was one line.  Exh. 1 to Rohny Declr. at p. 3 (showing 0.2 entry for "Review email with Joy Ellis re: Stipulated Protective Order); Exh. 3 to Ellis Affid. (showing email from Ellis regarding "Order on motion for protective order" and stating "[w]e will be sending the documents previously withheld over late today.  Thanks.").  Similar problems are seen with the other entries.  See Deft's Mem. in Opp. at pp. 7-8 (citing to billing entries and actual emails).  I award no time for these entries.

Second, as to the other 66 0.2 entries, I agree that the pattern seen in the billing records might raise suspicions, but, without personal knowledge by defendant, I have no basis to deduct any of that time in the absence of a specific objection by defendant. I have reviewed the entire billing record and am unable to conclude, without further evidence in the record, that the time spent was unreasonable.

23 - OPINION & ORDER

1                16.  Duplicative Fees

2          Defendant objects to any time entries where more than one

3     attorney performed the same task.  As defendant notes, "[w]hen

4     attorneys hold a telephone or personal conference, good 'billing

5     judgment' mandates that only one attorney should bill that

6     conference to the client, not both attorneys."  National Warranty

7     Ins. Co. v. Greenfield, 2001 WL 34045734, at *5 (D. Or. 2001).

8          Defendant cites to two instances of duplicative fees.  On

9     January 18, 2006, both Rohny and Crispin billed for a 1.4 hour

10    conference.  Exh. B to Crispin Declr. at p. 4.  I agree with

11    defendant that the time should be awarded to only one attorney.  I

12    award the time to Crispin.

13         On January 30, 2006, defendant notes that Rohny,

14    "uncharacteristically" block billed for 3.4 hours of time, during

15    which she notes she had a conference with Crispin.  Id. at p. 5.

16    Defendant states that on this same date, Crispin billed 2.9 hours

17    for preparing for depositions and travel.  Id.  Defendant argues

18    that even though Crispin does not list a conference with Rohny for

19    that date, his deposition preparation time would have included

20    meeting with Rohny as she was the primary attorney on the case.

21         I have already disallowed this time by Rohny because of the

22    block billing time.  Even if I had not, however, I would not

23    disallow the time as being duplicative without a more specific

24    entry by Crispin.  Rohny could have written Crispin a memorandum

25    regarding the depositions.  Or, Crispin could simply have not

26    billed for any conference time with Rohny related to the

27    depositions, knowing that double billing for it is frowned upon by

28    the Court.

24 - OPINION & ORDER

1    Notably, there is an entry by Crispin on January 25, 2006, for

2   .5 hours, part of which was spent conferring with Rohny regarding

3   the Sacramento depositions.  Id. at p. 4.  Rohny did not bill for

4   that time.  Similarly, on January 24, 2006, Russell billed 0.2

5   hours for conferring with Rohny regarding deposition testimony.

6   Id.  Rohny did not bill for that time.  Thus, the double billed

7   entry on January 18, 2006, appears to be an anomaly.

8    Although defendant did not object to time billed by both Rohny

9   and paralegal Swan for attendance at trial, my independent review

10  of the record shows that for the first three days of trial, July

11  25, 2006 through July 27, 2006, Rohny and Swan each billed 6.5

12  hours for attending trial.  Exh. 1 to Rohny Declr. at pp. 32-33.

13  On July 28, 2006, Rohny and Swan each billed 1.5 hours for

14  attending trial.  Id. at p. 33.  On July 31, 2006, each billed 2.7

15  hours for attending trial.  Id. at p. 34.  Thus, Rohny and Swan

16  each billed 23.7 hours for trial attendance.

17   It is understandable for counsel to be assisted by a paralegal

18  at trial.  When an attorney can delegate paralegal-type tasks to a

19  paralegal, the attorney is more efficient by focusing on matters

20  requiring the particular expertise of the attorney.  Nonetheless,

21  I do not see either the facts or the legal issues in this case as

22  requiring the presence of a paralegal at the trial at all times.

23  Nothing in the case was so complex as to justify the shift of all

24  trial-based paralegal fees to defendant.  Thus, of the 23.7 hours

25  sought by Swan for attending trial, I award 11.85.

26       17.  Clerical or Secretarial Tasks

27   Several decisions in this Court have refused to award time

28  spent on tasks which are primarily clerical in nature.  E.g.,

25 - OPINION & ORDER

1    <u>Confederated Tribes of Siletz Indians of Or. v. Weyerhaeuser Co.</u>,

2    No. CV-00-1693-A, 2003 WL 23715982, at *2 & n.3 (D. Or. Oct. 27,

3    2003) ("It is the nature of the work, and not just the title of the

4    person performing the task, that determines whether the service is

5    compensable and at what rate. . . . The reason secretarial costs

6    ordinarily are not compensable is because the prevailing practice

7    in the community is to include such costs within the overhead

8    subsumed by the attorney's hourly rate." ), <u>aff'd</u>, 411 F.3d 1030

9    (9th Cir. 2005), <u>cert. granted</u>, 126 S. Ct. 2965 (2006); <u>Jacobs v.</u>

10    <u>Local Union 48, IBEW</u>, No. CV-94-1544-HU, 2002 WL 31470403, at *3

11    (D. Or. Mar. 21, 2002) ("Regardless of who performs them, tasks

12    that are purely clerical or secretarial should not be billed at

13    paralegal rates.").

14        Defendant identifies two dates on which Rohny performed work

15    which is primarily clerical.  On January 26, 2006, Rohny billed 1.4

16    hours for "[R]eview documents produced by defendant - organize

17    file."  I reject defendant's contention that reviewing documents

18    produced by defendant is clerical work.  However, I agree with

19    defendant that organizing the file is clerical in nature.  I divide

20    the entry in half and award plaintiff .7 of Rohny's time for this

21    task.

22        On March 21, 2006, Rohny billed 1.2 hours for reviewing and

23    revising the table of authorities for the summary judgment response

24    memorandum, and 1.1 hours for finalizing the table of contents and

25    revising the headings.  Exh. B to Crispin Declr. at p. 5; Exh. 1 to

26    Rohny Declr. at p. 13.  Because the attorney is the author of the

27    memorandum, I do not see these tasks as primarily clerical in

28    nature.  However, I conclude that the amount of time sought is

26 - OPINION & ORDER

unreasonable given the nature of the task.    Nonetheless, I have already disallowed this time as excessive time spent preparing the summary judgment response and I do not deduct it twice.    While I otherwise would have awarded 1.0 of the total 2.3 hours claimed in these two entries, because I have already subtracted the time for a separate reason, I decline to award that time.

18.  Inadequately Specified Tasks

Tasks not adequately specified should not be compensated because without a description of the task evidencing what work was performed, the Court cannot assess whether it was reasonably incurred.  Defendant cites five instances where it contends that plaintiff's counsel did not adequately describe the task performed. First, defendant points to a 0.2 entry on January 24, 2006, by Russell for conferring with Rohny regarding the deposition of the principal.  Exh. B to Crispin Declr. at p. 4.  I do not find this description to be lacking in specificity.  The surrounding entries make clear that depositions of managerial witnesses in Sacramento were upcoming.  The time entry by Russell does not need to reveal the substance of the conference.

Next, defendant cites to a 0.2 time entry by Rohny on February 22, 2006, for sending an email to defense counsel legal assistant Michael Flanagen.  Exh. 1 to Rohny Declr. at p. 1.  I agree with defendant that this is not specific enough to warrant fees. Because the email was to a paralegal, it could have been primarily clerical in nature.  Because no subject matter of the email is disclosed, I cannot discern the subject of the communication. Given that it is plaintiff's burden to demonstrate that the fee sought is reasonable and necessarily incurred, I do not award this

27 - OPINION & ORDER

1  time.

2      Next, defendant cites to a 0.2 entry by Rohny on March 30,
3  2006, for "TC with Joy Ellis re: case." Id. at p. 14.  Here, the
4  description does not reveal who initiated this phone call.  It is
5  not unreasonable to assume that Rohny received the call.  I would
6  expect plaintiff's counsel to answer a call from opposing counsel.
7  While it would have been helpful to the Court in reviewing the fee
8  request if the entry showed the subject matter of the conversation,
9  presumably defendant's counsel has a record of the conversation as
10 well and could have provided that information to the Court with its
11 objection.  The fact that it did not suggests that the topic
12 discussed was related to a reimburseable task.  Moreover, the fact
13 that the conversation was with opposing counsel rather than a
14 paralegal, makes it reasonable to assume that the subject matter
15 concerned legal issues rather than clerical issues.

16     Defendant next points to a 0.2 entry by Rohny on June 24,
17 2006, for reviewing email correspondence from plaintiff. Id. at p.
18 20.  I agree with defendant that this task is not adequately
19 described.  Because the subject matter of the correspondence is not
20 disclosed, I cannot ascertain if the time spent was reasonably
21 necessary.  While it may not have been unreasonable for Rohny to
22 bill this time to her client, without more information regarding
23 the nature of the correspondence, it is not reasonable to shift the
24 expense to defendant.

25     Finally, defendant cites to a 0.2 entry by Rohny on June 29,
26 2006, for email correspondence with mediator Susan Hammer. Id. at
27 p. 21.  It is clear from the billing records that Susan Hammer
28 attempted to mediate a settlement to the case earlier in the year.

28 - OPINION & ORDER

1  It is not unreasonable to assume that the correspondence with

2  Hammer was related to settlement.   It is possible that Hammer

3  emailed Rohny regarding the status of the case.   It is possible

4  that Rohny emailed Hammer about restarting settlement discussions.

5  In either case, the time billed is allowable as it is related to

6  settlement.

7            19.  Miscellaneous Billing Entries

8        Defendant makes three additional objections, unrelated to any

9  of the above categories.   On July 1, 2006, Rohny spent 2.3 hours

10 researching evidentiary issues.  Id. at p. 22.  A second entry that

11 same date shows 10.6 hours of time, including two hours of research

12 related to specific evidentiary issues.  Id.  Defendant argues that

13 the second entry likely subsumes the first entry.   I agree with

14 defendant that the failure to specify the evidentiary research

15 topics in the first entry renders the entry too general, given the

16 presence of the specific entry that same date.  Nonetheless, I have

17 already subtracted this time because of the excessive number of

18 hours spent by plaintiff responding to defendant's objections to

19 plaintiff's witnesses and exhibits.   The billing entries at issue

20 here demonstrate that the time claimed was  spent on that task.

21 Because I have already subtracted it for a separate basis, I do not

22 do so again.

23      Defendant also raises an objection to other parts of the 10.6

24 hour entry on July 1, 2006.   Defendant complains that the time

25 listed as having been spent preparing the final response to

26 defendant's motion in limine and the objections to plaintiff's

27 witnesses, is inconsistent with entries on the next two days

28 showing additional work on those tasks.   I reject defendant's

29 - OPINION & ORDER

1  argument because there is no evidence that plaintiff's counsel did
2  not actually spend the time on the task and more likely than not,
3  she prematurely described the work performed on July 1, 2006, as
4  work on a final version.

5      Finally, defendant objects to 2.6 hours spent on July 15,
6  2006, and another 1.1 hours on July 24, 2006, for reading secondary
7  sources regarding trial preparation. Exh. 1 to Rohny Declr. at pp.
8  28, 32.   I agree with defendant that this is time spent on
9  professional enhancement and is not reasonably compensable in a fee
10 award.

11     E.  Calculation of the Lodestar

12     As stated above, the reasonable hourly rate for Rohny is $205
13 per hour.  As stated above, my review of the record shows that
14 Rohny seeks compensation for 1,062.6 hours of time.  Based on the
15 preceding discussion regarding the excessive number of hours, I
16 conclude that Rohny is entitled to fees for 654.15 hours, producing
17 a lodestar of $134,100.75.  Crispin is awarded 21.1 hours at $225
18 per hour for a lodestar of $4,747.50.  Russell is awarded 0.2 hours
19 at $205 per hour for a lodestar of $41.  Stevens is awarded 12.3
20 hours at $90 per hour for a lodestar of $1,107.  Swan is awarded
21 145.6 hours at $40 per hour for a lodestar of $5,824.  Together,
22 these individual sums produce a total of $145,820.25.

23     F.  Application of the Remaining Kerr Factors

24     As noted above, after calculation of the lodestar, the court
25 may refer to the Kerr factors, not subsumed in the initial lodestar
26 calculation, to determine if an adjustment to the lodestar is
27 warranted.  Morales, 96 F.3d at 363-64.  "The lodestar amount is
28 presumptively the reasonable fee amount, and thus a multiplier may

30 - OPINION & ORDER

be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." <u>Van Gerwen v. Guarantee Mut. Life Ins. Co.</u>, 214 F.3d 1041, 1045 (9th Cir. 2001) (internal quotation marks omitted).

Factors not subsumed include the preclusion of other employment by the attorney due to acceptance of the case, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases. None of these factors warrant an adjustment to the lodestar.

There is no evidence that plaintiff's counsel turned away other work because of this case. Although listed as a factor in <u>Kerr</u>, the contingent or fixed fee nature of a case is no longer a valid basis for adjusting the lodestar. <u>City of Burlington v. Dague</u>, 505 U.S. 557, 565-67 (1992). There is no evidence of any time limitations at issue in this case.

Plaintiff sought over $3 million in punitive damages, compensatory damages, front pay, and back pay. The jury awarded $250,000 in punitive damages and $225,000 in compensatory damages. I declined to award front pay because the claim was too speculative. Plaintiff sought approximately $67,000 in back pay. I awarded her $16,239.48. Because plaintiff failed to prevail on the wrongful discharge her compensatory and punitive damages were capped by the Title VII statutory maximum of $300,000.

31 - OPINION & ORDER

1    On balance, plaintiff obtained very good results.  While she
2    did not achieve nearly the amount sought on punitive damages, she
3    nonetheless ended up with a total damages award just shy of
4    $500,000, a formidable sum.

5    Plaintiff's counsel are experienced and demonstrated a high
6    level of ability in prosecuting this case.  There is no evidence
7    that the case was "undesirable."  There is no evidence in the
8    record suggesting that the professional relationship between
9    plaintiff and counsel extends beyond this case.  The relationship
10   began in October 2004, sometime after plaintiff filed her BOLI
11   complaint.  Exh. B to Crispin Declr. at p. 1.  Finally, plaintiff
12   cites to no awards in similar cases. Although a declaration by
13   David Markowitz states that in 2002, Rohny received a billing rate
14   of $195 per hour in one case and $205 per hour in another, both
15   from Washington County Circuit Court, Markowitz Declr. at ¶ 4,
16   there is no evidence that either of those cases were similar to
17   this one, and while Markowitz's statement reveals the hourly rate
18   awarded, there is no evidence in this record of the total fee award
19   in any similar case.

20   II.  Cost Bill

21   Costs, other than attorney's fees, are awarded to the
22   prevailing party.  Fed. R. Civ. P. 54(d)(1); see also O.R.S.
23   659A.885 (authorizing an award of costs to the prevailing party in
24   an action under O.R.S. 659A.030).

25   28 U.S.C. § 1920 authorizes the taxation of particular costs,
26   including clerk filing fees, court reporter transcript fees, copy
27   fees, witness fees, and docket fees under 28 U.S.C. § 1923.
28   Defendant does not object to plaintiff's request for $150 in filing

32 - OPINION & ORDER

fees, $483.35 in witness service fees and witness mileage costs, $315 in fees for service of subpoenas, or the $20 docket fee under section 1923. My review of the materials submitted by plaintiff in support of the cost bill shows that these requested costs are reasonable, were necessarily incurred in this action, are adequately documented, and should be awarded.

Defendant objects to three requested costs. First, defendant objects to the fee for expedited transcripts for the depositions of Donald Beck, Ken Roscoe, and Richard Stolpe. Plaintiff offers no explanation of why these transcripts were expedited and the record reveals no apparent basis. I agree with defendant that the cost of expediting the transcripts should not be recoverable. The initial court reporter invoice submitted by plaintiff in support of these particular costs does not show a separate fee for expediting the transcripts. Exh. 2 to Rohny Declr. at p. 11. However, in response to a request by the Court, plaintiff provided an October 25, 2006 invoice from the court reporter showing the cost for these depositions without the expediting fee to be $1,007. Exh. A to Oct. 25, 2006 Rohny Declr. Thus, I award plaintiff $1,007 for the deposition transcript costs for Beck, Roscoe, and Stolpe.

Next, defendant objects to a copying cost incurred by plaintiff on June 19, 2006. An invoice from Streamline Imaging shows a charge of $83.44 for scanning 596 documents and $29.25 for color scanning of 39 documents. Exh. 2 to Rohny Declr. at p. 6. The total cost for scanning is $112.69 for 635 documents. Id.

Defendant does not object to the scanning cost, but does object to the copying of five sets of the scanned documents. The invoice shows a charge of $206.38 for "Blowbacks - 5 sets." Id.

33 - OPINION & ORDER

1    The total quantity was 3,175. _Id._ Defendant reasonably infers
2    from the invoice that the charge reflects five copies of each of
3    the 635 scanned documents because 3,175 divided by 5 equals 635,
4    the number of documents scanned.

5        I agree with defendant that seeking reimbursement for five
6    copies is unreasonable. I allow the $112.69 cost associated with
7    the scanning, but disallow the $206.38 for the five copies.

8        Finally, defendant objects to the $372.20 in copy costs
9    incurred by Crispin Employment Lawyers. Bill of Costs at p. 4. I
10   agree with defendant that the requested $372.20 is unsupported by
11   the submitted documentation. The record shows that while the case
12   was with Crispin Employment Lawyers, $230.25 was expended for copy
13   costs, plus $63.66 for a copy of the file from the Bureau of Labor
14   and Industries, for a total of $293.91, not the $372.20 requested.
15   Thus, I allow only $293.91 for copy costs incurred by Crispin
16   Employment Lawyers.

17       The total costs award is $2,858.74.

18   / / /
19   / / /
20   / / /
21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

34 - OPINION & ORDER

CONCLUSION

Plaintiff's motion for attorney's fees (#129) is granted in part and denied in part.  Plaintiff is awarded $145,820.25 in fees. Plaintiff's cost bill (#128) is granted in part and denied in part. Plaintiff is awarded $2,858.74 in costs.

IT IS SO ORDERED.


Dated this __13th__ day of _November___, 2006.



___/s/ Dennis James Hubel_____
Dennis James Hubel
United States Magistrate Judge

35 - OPINION & ORDER